Exhibit B

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CHARLES GORMLY,**<br><br>            **Plaintiff,**<br><br>**v.**<br><br>**JAMES WALKER,** *et al.*,<br><br>            **Defendants.** | **Civil Action No. 21-2688 (CRC)** |
| **HELEN KASAY,**<br><br>            **Plaintiff,**<br><br>**v.**<br><br>**DISTRICT OF COLUMBIA,** *et al.*,<br><br>            **Defendants.** | **Civil Action No. 21-2693 (CRC)** |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DISTRICT OF COLUMBIA DEFENDANTS' MOTION TO DISMISS THE COMPLAINTS**

### INTRODUCTION

Plaintiff Charles Gormly, as personal representative of the estate of Fitsum Kebede, and Plaintiff Helen Kasay, as personal representative of the estate of Yafet Solomen, her son, bring this suit against the District of Columbia (the District) and ten named District employees[1] (collectively, the District Defendants) alleging that the District failed to adequately enforce various provisions of building safety statutes and regulations against Defendant James Walker, owner and landlord of 708 Kennedy Street, N.W. (the Property). Kebede and Solomen, both residents there, died when a fire broke out at the Property due to unsafe building modifications

---

[1]      These include Inez Saki-Tay, Louise Peterson, Harriett A. Broadie, Anthony Prather, Ferdinand Gamboa, Anette Tibbs, Derek Brooks, Timothy Handy, John Barnes Jr., and Shawnte Williams.  Defendant Steven Allen has not been served with the Complaint.

Exhibit B

installed by Walker.  Plaintiffs, however, fail to state a claim for relief against the District

Defendants. Plaintiffs' claim under 42 U.S.C. § 1983 (Section 1983) alleging that the District

violated Kebede and Solomen's due process rights cannot stand because the District itself did not

cause or create the risk that led to their deaths.  And Plaintiffs' two common law negligence

claims against the District Defendants are barred by the public duty doctrine because the District

did not owe a duty to Kebede and Solomen personally to enforce the Construction or Fire Codes;

those provisions instead create duties owed to the public as a whole.  Plaintiffs' complaints

should therefore be dismissed as against the District Defendants in full and with prejudice.

## FACTS

According to Plaintiffs, Walker, the owner of the Property, rented a basement apartment

to Kebede.  Compl. [1-1] ¶¶ 24–25, 31.[2]  Plaintiffs assert that "Defendant Walker made

significant and dangerous modifications to the Property."  *Id*. ¶ 28.  These included makeshift

partitions, with holes punched out for extension cords.  *Id*. ¶¶ 29, 30.  Walker also permitted his

partner to operate a seamstress business on the Property and installed a metal security gate

between the basement and the main floor, leaving only one direct exit route from the basement of

the Property.  *Id*. ¶¶ 27, 33–34.  Finally, the Property had metal bars over the windows.  *Id*. ¶ 35;

*see also* Kasay Compl. [1-1] Ex. 1 (A&M Report) at 8 (noting no working smoke detectors, no

lighted exit signs or fire exit, and a single untagged fire extinguisher).  Walker did not obtain a

Certificate of Occupancy for the apartments or seamstress business at the Property.  Compl. ¶¶

38, 40.

Metropolitan Police Department (MPD) Officer Ernie Davis responded to a tenant issue

---

[2]     Because the allegations and causes of actions in each complaint are substantially similar,
except where otherwise stated, all citations to the Complaint refer to the complaint filed in
*Gormly*.

at the Property on March 21, 2019, and after identifying what he thought were various Building

Code violations, reported the Property to the D.C. Department of Consumer and Regulatory

Affairs (DCRA) and the D.C. Fire and Emergency Medical Service Department (FEMS).  *Id*. ¶¶

41, 44, 50.  After Officer Davis followed up by requesting an investigation, DCRA assigned an

inspector, Defendant Steven Allen, to visit the property.  *Id*. ¶¶ 73–76.  Allen first visited the

Property on May 22, 2019, and returned on May 23 and 24, 2019, but was unable to gain entry to

the Property.  *Id*. ¶¶ 81–84.  Plaintiff alleges that DCRA closed its investigation of the Property

on August 16, 2019.  *Id*. ¶ 100.

On August 18, 2019, a fire started in Kebede's room in the basement of the Property.  *Id*.

¶ 102.  FEMS personnel responded to the fire and attempted to access the basement, but they

were unable to do so in a timely fashion due to the metal security barrier installed by Walker

between the main floor and basement.  *Id*. ¶¶ 105–08.  Kebede was unable to escape the Property

and died in the fire.  *Id*. ¶¶ 103, 109–12.  Solomen was also unable to escape the Property and

sustained critical injuries in the fire.  Kasay Compl. ¶¶ 106, 111–14.  Solomen was transported

by FEMS personnel to the Children's National Hospital and later passed away on August 20,

2019.  *Id*. ¶¶ 115, 132–33, 138.

After the fire, the District commissioned an independent investigation to review DCRA

and FEMS's response to Officer Davis's report concerning the Property.  Compl. ¶ 113.  That

report criticized various aspects of those agencies' handling of the report, and ultimately made a

series of recommendations to improve MPD, DCRA, and FEMS practices associated with

reports of unsafe building practices.  *See id*. ¶¶ 116, 134; A&M Report at 50–69.

Plaintiffs originally filed their respective lawsuits in the Superior Court of the District of

Columbia on August 17, 2021.  Plaintiffs each bring five claims.  Counts I & II are negligence-

Exhibit B

based claims against Walker, while Counts III & IV are negligence-based claims against the

District Defendants.  *See* Compl. at 35–52.  Count V is a Section 1983 Fifth Amendment due

process claim brought against the District only.  *See id.* at 52–55.  The District Defendants

removed the cases on October 13 and 14, 2021, and the Court consolidated the cases for

purposes of docketing on December 14, 2021.

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the

court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

(quoting *Twombly*, 550 U.S. at 556). "While legal conclusions can provide the framework of a

complaint, they must be supported by factual allegations." *Id*. at 679. "[A] complaint [does not]

suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. at 678

(quoting *Twombly*, 550 U.S. at 557). "Courts may consider documents 'incorporated in the

complaint' when considering a 12(b)(6) motion." *EEOC v. St. Francis Xavier Parochial Sch.*,

117 F.3d 621, 624 (D.C. Cir. 1997).

## ARGUMENT

**I.**     **Count V Should Be Dismissed Because Plaintiffs Fail to State a Claim to Relief.**

In Count V of their respective complaints, Plaintiffs allege that "[t]he District's customs,

polices, and/or practices, were a moving force and legal cause of [Kebede and Solomen's]

injuries, . . . and deprived [Kebede and Solomen] of [their] rights, privileges, and immunities

secured by the Fifth and Fourteenth Amendments of the United States Constitution, including the

4

rights to life, safety, and personal security."  Compl. ¶ 255; *see also id.* ¶ 254.  A Section 1983

claim against a municipality must satisfy two prongs:  it must adequately state a claim for a

predicate constitutional violation, and it must adequately plead that a custom or policy of the

municipality caused that violation.  *See Baker v. District of Columbia*, 326 F.3d 1302, 1306

(D.C. Cir. 2003); *Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978).

Plaintiffs' claim fails on both fronts.

### A.    <u>Plaintiffs Fail to Plead a Constitutional Violation.</u>

The predicate constitutional violation that is advanced here is, in essence, a Fifth

Amendment[3] substantive due process claim based on the District's failure to abate dangerous

living conditions at the Property created by Walker.  *See, e.g.*, Compl. ¶ 92 ("Upon information

and belief . . . no further action was taken by any DCRA employee to investigate, inspect, or

abate the dangerous conditions at the Property before the fire.").  But this theory of liability was

foreclosed by the Supreme Court in *DeShaney v. Winnebago County Department of Social

Services*, 489 U.S. 189, 195 (1989):

> [N]othing in the language of the Due Process Clause itself requires the State to
> protect the life, liberty, and property of its citizens against invasion by private
> actors.  The Clause is phrased as a limitation on the State's power to act, not as a
> guarantee of certain minimal levels of safety and security.  It forbids the State itself
> to deprive individuals of life, liberty, or property without "due process of law," but
> its language cannot fairly be extended to impose an affirmative obligation on the
> State to ensure that those interests do not come to harm through other means.

Here, Plaintiffs do not plausibly allege that the District itself deprived Kebede and

Solomen of their lives or safety.  Plaintiffs present a long list of alleged customs, policies, and

practices of the District relating to how it administers and enforces building and fire code

---

[3]    Due process claims against the District are evaluated under the Fifth Amendment rather
than the Fourteenth Amendment because the District is not a state.  *See Butera v. District of
Columbia*, 235 F.3d 637, 645 n.7 (D.C. Cir. 2001); *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954).

Exhibit B

regulations.  *See* Compl. ¶ 251(a)–(l).  But not one of these allegations show that the District *itself* caused unsafe conditions at the Property, much less the fire there.  *Id*.  To the contrary, Plaintiffs admit that "Defendant Walker made significant and dangerous modifications to the Property," *id*. ¶ 28, and offer no facts whatsoever about the immediate cause of the fire, *see id.* ¶ 102.  Plaintiffs' conclusion that the District "foreseeably created . . . the risk to . . . [Kebede and Solomen]," *id*. ¶ 254, is thus wholly unsupported by any factual allegations in the Complaints and fails to plausibly support their due process claim.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiffs also assert that the District "foreseeably . . . amplified the risk to . . . [Kebede and Solomen], evincing its deliberate indifference to [Kebede and Solomen's] rights . . . . In this way, the District's actions were shocking and outrageous."  Compl. ¶ 254.  To the extent that Plaintiffs attempt to advance a state-endangerment theory, it likewise fails.  The state endangerment theory of substantive due process rests on two predicates, neither of which are satisfied here:  first, "District of Columbia officials affirmatively act to increase or create the danger that ultimately results in the individual's harm"; and secondly, "that conduct was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Wright v. District of Columbia*, 799 F. Supp. 2d 1, 8 (D.D.C. 2011) (citing *Butera v. District of Columbia*, 235 F.3d 637, 651 (D.C. Cir. 2001) (internal quotations omitted).

Here, "[t]here can be doubt that [the District] did not create the danger that ultimately resulted in [Kebede and Solomen's] demise."  *Id*.  As Plaintiffs acknowledge, the danger at issue was unsafe building conditions created by a third party, which created the conditions that prevented Plaintiffs' decedents from being able to escape the fire that broke out at the Property. Compl. ¶ 28, 102.  "No constitutional liability exists where State actions 'had no hand in creating

6

a danger but simply stood by and did nothing when suspicious circumstances dictated a more active role for them.'" *Butera*, 235 F.3d at 650 (quoting *Reed v. Gardner*, 986 F.2d 1122, 1125 (7th Cir. 1993)).  Yet that is the essence of Plaintiffs' claim:  that the District did not adequately "investigate, inspect, or abate the dangerous conditions at the Property before the fire."  Compl. ¶ 92.  Because Plaintiffs challenge the District's alleged failure to act and do not contend that the District "affirmatively act[ed] to increase or create the danger that ultimately results in the individual's harm" (nor could Plaintiffs plausibly make any such allegation), their state endangerment theory fails on this ground alone.  *Butera*, 235 F.3d at 651.

What is more, the District's conduct here was not "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Wright*, 799 F. Supp. 2d at 8. *Williams v. District of Columbia*, No. 19-CV-2353 (CJN), 2020 WL 1332027 (D.D.C. Mar. 23, 2020), which dismissed a substantive due process claim against the District resting on damages the plaintiff sustained due to unremedied hazardous building practices, is on point here.  There, renovation work being performed next door allegedly damaged Plaintiff's property, and she sued the District, alleging that her son had contacted DCRA about the neighboring project, and that despite DCRA's issuance of a stop-work order, it failed to enforce that order and ultimately granted a certificate of occupancy to the adjoining property without addressing any of the identified issues. *Williams*, 2020 WL 1332027, at *1.  In dismissing the substantive due process claim, the court noted that the plaintiff did "not allege any intent on the part of the District or its employees to injure [the plaintiff's] property interest . . . in some unjustifiable way." *Id*. at *3. So too here.  Plaintiffs do not allege any intent by the District to cause harm to Kebede and Solomen—instead, Plaintiffs merely allege the District's "awareness of dangerous and unlawful conditions at the Property" and a failure to "address[] such conditions upon the District's notice

of same."  Compl. ¶ 256.  Thus, Plaintiffs' due process claim fails.

Finally, Plaintiffs also assert that various District laws and regulations mandated that the District intervene in this matter, *see id*. (citing D.C. Code §§ 6-901, 1405.01; 12A DCMR §§ 115.1–115.3.), but an alleged failure to enforce District law, or to follow agency best practices, does not amount to a substantive due process violation.  *See Elkins v. District of Columbia*, 527 F. Supp. 2d 36, 49 (D.D.C. 2007) ("Inadvertent errors, honest mistakes, agency confusion, even negligence in the performance of official duties, do not warrant redress.  A mere violation of law or deviation from regulations and procedures has been found insufficient to support a substantive due process claim.").  As the D.C. Circuit noted in *Butera v. District of Columbia*, 235 F.3d 637 (D.C. Cir. 2001), "while it may be possible under District of Columbia tort law for a plaintiff to obtain a remedy by proving mere negligence or failure to exercise due care, this 'lowest common denominator of customary tort liability' is 'categorically beneath the threshold of constitutional due process.'"  235 F.3d at 651 (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 848–49 (1998)).  Because Plaintiffs here allege only deliberate indifference amounting to negligence— indeed, the only other claims in this case against the District are negligence claims—they fail to demonstrate the level of conduct required to sustain a claim for substantive due process.  As a result, the Court should dismiss Count V of Plaintiffs' complaints.

> **B.**     **Plaintiffs Fail to Show that the Purported Constitutional Violation Was Caused by a Municipal Policy, Custom, or Practice.**

Count V should also be dismissed for Plaintiffs' failure to allege any basis for holding the District liable as a municipality.  Local governments, including the District, are "persons" for purposes of Section 1983, but municipal liability cannot be predicated on a *respondeat superior* theory.  *Monell*, 436 U.S. at 690–91.  Rather, "[p]laintiffs who seek to impose liability on local governments under Section 1983 must prove that 'action pursuant to official municipal policy'

caused their injury." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell*, 436 U.S. at 691).

There are four ways official municipal policy can be shown:  (1) express municipal policy; (2) actions of a final municipal "policymaker"; (3) persistent conduct by non-policymakers (*i.e.*, "custom" with the force of law); and (4) "deliberate indifference" to a risk of constitutional injury.  *Baker*, 326 F.3d at 1306–07.  Each theory has its own elements, which a Section 1983 plaintiff bears the burden of pleading in accordance with *Iqbal*.  *See Blue v. District of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015).  Additionally, under any theory, a municipal liability claim requires proof of causation—specifically, an "affirmative link" between the alleged municipal policy and the alleged constitutional violation "such that [the former] was the moving force behind [the latter]."  *Baker*, 326 F.3d at 1306.

Plaintiffs identify 12 "customs, policies, and/or practices" that they contend the District maintained and that allegedly "were a moving force and legal cause of [Kebede and Solomen's] injuries . . . ."  Compl. ¶¶ 251, 255.  These largely track the A&M Report's opinions as to "underlying issues" in District agency operations pertaining to reports of unsafe buildings.  *See* A&M Report at 6–7.  They include, among others, "failing to implement clear channels of communication between . . . agencies," "maintaining unclear statutory and/or regulatory directives concerning . . . addressing unlawful and/or dangerous conditions at rental properties," "permitting the use of informal methods of communication, records keeping, and investigations tracking at DCRA," and "relying on the oversight of DCRA Program Managers in investigating unlawful and/or dangerous conditions at rental properties."  Compl. ¶ 251(a), (b), (d), (j).  But none of these satisfy *Monell*.

First, none of the identified practices are alleged to be official municipal policy.

Exhibit B

Plaintiffs' citation elsewhere to purported "statutory duties applicable to the District," which they contend require the District to take various steps in responding to reports of unsafe buildings, *see* Compl. ¶¶ 180–185, amply demonstrates that "[Plaintiffs'] true grievance is not with a policy or custom of the District, but rather with . . . specific [individual] decision[s]." *Coppet v. District of Columbia*, 75 F. Supp. 3d 144, 148 (D.D.C. 2014).

Plaintiffs similarly do not allege municipal liability through actions of a final policymaker. "The Supreme Court narrowly interprets [the term municipal] 'policymaker' for the purposes of § 1983 liability, and discretion in a job function is not enough." *Allen-Brown v. District of Columbia*, 54 F. Supp. 3d 35, 42 (D.D.C. 2014) (citing *St. Louis v. Praprotnik*, 485 U.S. 112, 126 (1988) (O'Connor, J., plurality op.)); *see also Byrd v. District of Columbia*, 807 F. Supp. 2d 37, 75 (D.D.C. 2011) ("If an official's discretionary decisions are constrained by policies not of that official's making, then those policies—rather [than] the official's departure from them—are the act of the municipality.") (emphasis and internal citations omitted). Here, Plaintiffs fail to allege that any individual District Defendant has such final policymaking authority. Rather, Plaintiffs' cited statutes and regulations charge the Mayor or the DCRA Code Official with enforcing District laws pertaining to unsafe buildings, but Plaintiffs have not named the Mayor or Code Official as defendants or alleged that they had any role in the response to conditions at the Property. *See* Compl. ¶¶ 180–85.

Plaintiffs also have not sufficiently alleged a municipal custom. "When a plaintiff seeks to establish a municipal liability in the absence of an explicit policy, he must allege 'concentrated, fully packed, precisely delineated scenarios as proof that an unconstitutional policy or custom exists.'" *Ryan v. District of Columbia*, 306 F. Supp. 3d 334, 346 (D.D.C. 2018) (quoting *Page v. Mancuso*, 999 F. Supp. 2d 269, 284 (D.D.C. 2013)). These must amount to a

demonstration "that the alleged constitutional violation is so commonplace that it can reasonably be deemed a customary practice of the District." *Id*. (citing *Blue*, 811 F.3d at 19).  A "policy of inaction in light of notice that its program will cause constitutional violations is the functional equivalent of a decision by [a municipality] itself to violate the Constitution." *Connick*, 563 U.S. at 61–62.

Here, plaintiff raises several alleged practices of the District in responding to reports of unsafe buildings, but none is alleged to itself violate the Constitution.  *See* Compl. ¶ 251.  The Section 1983 claim, then, amounts to a theory that these alleged customs led to a constitutional violation in Kebede and Solomen's case in particular.  *See id*. ¶ 255.  Critically, Plaintiffs fail to plausibly allege that these alleged customs amounted to cause constitutional deprivations "so commonplace that it can reasonably be deemed a customary practice of the District." *Ryan*, 306 F. Supp. 3d at 346.  Plaintiffs' recited history of the District's purported failure to address dangerous housing conditions simply shows that the District has been occasionally pressed to do more to address illegal, unsafe properties, not that any of those incidents amounted to the District violating the constitutional rights of victims of unsafe buildings.  *See* Compl. ¶¶ 158–161.  Even if the allegations could be so construed, prior constitutional violations must be identical to the alleged wrongdoing underlying a plaintiff's own claim.  *See Hurd v. District of Columbia*, 997 F.3d 332, 338–39 (D.C. Cir. 2021); *Egudu v. District of Columbia*, 72 F. Supp. 3d 34, 42 (D.D.C. 2014).

Plainly, Plaintiffs' references to incidents involving properties with vermin infestations and lack of heat and to DCRA allegedly improperly ordering a tenant to vacate a property are not the same alleged constitutional violations—if they are constitutional violations at all—as in this case, in which unsafe building practices prevented Kedebe and Solomen from escaping a fire.

Exhibit B

*See* Compl. ¶¶ 158, 161.  And in the case of the 2015 Dupont Circle rowhouse fire, "inspectors were not able to determine if any code violations were present."  Compl. ¶ 159 n.6; *see also* Andrea Swalec, *Illegal Apartments Can Go Unnoticed, Officials Say After 3 Die in DC Rowhouse Fire*, NBCWashington, June 15, 2018, https://www.nbcwashington.com/news/local/illegal-apartments-can-go-unnoticed-dc-officials-say-after-2-deaths/1996722.  At most, that lone incident shows the District was unaware that an illegal unlicensed apartment was being operated.  And even if that single incident could be construed as an apt comparison to the situation at issue here, a single example of one similar purported constitutional violation is insufficient to sustain a municipal custom claim.  *See Ryan*, F. Supp. 3d at 346; *see also Carter v. District of Columbia*, 795 F.2d 116, 125 (D.C. Cir. 1986).

Finally, Plaintiffs' deliberate indifference theory fails, for much the same reasons as their custom theory.  "Deliberate indifference exists when the municipality knew or should have known of the risk of constitutional violations, but did not act."  *Hurd*, 997 F.3d at 339 (internal quotations omitted).  "This standard simply means that, when faced with actual or constructive knowledge that its agents will probably violate constitutional rights, the city may not adopt a policy of inaction."  *Id*. (internal quotations omitted).  "Actual or constructive notice may be shown by demonstrating a pattern of similar constitutional violations."  *Id*. (internal quotations omitted).  Here, as outlined above, Plaintiffs do not adequately plead that the District was on notice due to prior incidents of constitutional violations, and therefore fail to adequately plead a deliberate indifference theory.  *See Connick*, 563 U.S. at 62; *see also City of Canton v. Harris*, 489 U.S. 378, 391 (1989) ("Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training . . . .  Such a claim could be made about almost any encounter resulting in injury . . . .").  Because Plaintiffs fail to identify a basis for

Exhibit B

municipal liability, the Court should dismiss Count V of the respective complaints.

## II.     Counts III & IV Should Be Dismissed Because They Are Barred by the Public Duty Doctrine.

Counts III and IV of the Complaints include, respectively, a wrongful death negligence and negligence *per se* claim, and a survival action negligence claim.  Compl. at 43, 48.  Both counts assert that the District Defendants breached a duty of care and were negligent in their response to Officer Davis's report of unsafe conditions at the Property.  *See, e.g.*, *id.* ¶ 222(p) (asserting negligence due to "all District Defendants' failure to take down and remove the improvements, or make them safe and secure, due to the Property's dangerous conditions and code violations, in violation of their mandatory and non-discretionary duties . . .").  But the public duty doctrine bars these claims in their entirety.

"It is a fundamental principle that a government and its agents are under no general duty to provide public services, such as police protection, to any particular individual citizen.  That is true of . . . actions as well as inactions by District government employees."  *Miango v. Dem. Rep. Congo*, 243 F. Supp. 3d 113, 129 (D.D.C. 2017) (citing *Warren v. District of Columbia*, 444 A.2d 1, 4 (D.C. 1981) and *Powell v. District of Columbia*, 602 A.2d 1123, 1129 (D.C. 1992)) (internal quotations omitted).  "Rather, the duty owed is to the public, and absent a special relationship, the District of Columbia cannot be held liable."  *Id*. (quoting *Platt v. District of Columbia*, 467 A.2d 149, 151 (D.C. 1983)).[4]  Plaintiffs' common law claims fall squarely under this principle, as they seek to hold the District Defendants responsible for not enforcing various

---

[4]     The doctrine extends to government officials sued in their individual capacities.  *See Barnes v. District of Columbia*, No. 03-CV-2547, 2007 WL 1655868, at *4–5 (D.D.C. 2007) (citing *Varner v. District of Columbia*, 891 A.2d 260, 274 (D.C. 2006)). Here, plaintiffs do not allege that any individual District Defendant took any purportedly negligent action that did not arise outside of their employment with the District. *See* Compl.

13

Exhibit B

provisions of the District's Construction Codes against Walker and not forcing him to ameliorate the conditions at the Property before the fire.  *See, e.g.*, Compl. ¶¶ 219, 235 (asserting that the District Defendants "owed Kebede [and Solomen] a duty to . . . assure that the Property was in full compliance with the Construction Codes and the regulations issued pursuant to the Construction Codes").  But the Construction Codes, like other police protection laws, are enforced for the benefit of the public, not for any particular individuals.

*District of Columbia v. Forsman*, 580 A.2d 1314, (D.C. 1990), is instructive here.  There, the plaintiff homeowners were injured when their home collapsed due to substandard demolition work at the adjacent property.  The District had, allegedly erroneously, not required a permit for that demolition work, and the homeowners had twice met with a DCRA building inspector to express concern about damage caused by the work.  *Forsman*, 580 A.2d at 1315–16.  In rejecting the homeowners' negligence claim against the District, the D.C. Court of Appeals noted that "the duty of the District of Columbia to enforce its regulations, including the demolition permit regulation at issue here, is normally a duty owed to the general public rather than a specific individual."  *Id.* at 1317; *see also* D.C. Code § 6-1404 (indicating that the intent of the Construction Codes is to "ensure public safety, health, and welfare by regulating and governing the conditions and maintenance of premises buildings, and structures . . . and, in general, to secure safety to life and property from all hazards").

Similarly, in *Platt v. District of Columbia*, 467 A.2d 149, 150–51 (D.C. 1983), the District was aware of alleged building and fire code violations at a theatre where a fire subsequently broke out.  There, the court also applied the public duty doctrine in holding the District not liable for injuries caused by the fire.  *See Platt*, 467 A.2d at 151.  The Construction Code provisions Plaintiffs cite here, like those in asserted in *Forsman* and *Platt*, create general

14

Exhibit B

duties which are owed to the general public, not to Kebede and Solomen or any other individual in particular.

Nor can Plaintiffs establish the special relationship exception to the public duty doctrine. "In order to convert this general duty owed to the public to a special duty, two additional elements are necessary:  (1) a direct contact or continuing contact between the victim and the governmental agency or official; and (2) a justifiable reliance on the part of the victim." *Miango*, 243 F. Supp. 3d at 129.  "The first prong of the test requires that there be some form of privity between the agency and the victim that sets the victim apart from the general public." *Nealon v. District of Columbia*, 669 A.2d 685, 692 (D.C. 1995) (internal quotations omitted).  "With regard to the second prong of the test, justifiable reliance means particular or special reliance." *Id*. (internal quotations omitted).

Plaintiffs here do not allege that Kebede and Solomen (or Solomen's mother, Plaintiff Kasay) personally made any contact with any District Defendant, or indeed, with any District employee whatsoever.  *See generally* Compl.  Instead they attempt to invoke this exception to the public duty doctrine by baldly claiming that "[u]pon Officer Davis' finding unsafe conditions and code violations at the Property, and his reporting of such unsafe conditions and code violations . . . a special relationship existed between Kebede [and Solomen], the District, and the District Defendants . . . ."  Compl. ¶¶ 218, 234; *see also id*. ¶¶ 220, 236 ("At all relevant times herein, Kebede [and Solomen] justifiably relied on the District and the [individual] District Defendants to fulfill the aforementioned duties owed to [them] by virtue of the special relationship.").  But this line of reasoning was explicitly rejected by the *Platt* court, which expressly held that "the mere knowledge of a defect would not be enough to establish a direct or continuing contact between the [injured parties] and the government officials."  *Platt*, 467 A.2d

15

Exhibit B

at 151.  Instead, "[t]he required contact must . . . be a direct transition with the person injured or an arms-length relationship in which the city's agent is dealing directly, in some form, with the person injured."  *Powell*, 602 A.2d at 1130 (citation and internal quotation marks omitted).

Similarly, mere proximity of District officials to the danger does not give rise to a special relationship.  *See Varner v. District of Columbia*, 891 A.2d 260, 275 (D.C. 2006); *see also Forsman*, 580 A.2d at 1319 ("Certainly an inspector's limited involvement in monitoring a construction or demolition site does not place a duty on the District to monitor such activities on that property continuously thereafter.").  Nor does "ineptitude, even shameful and inexcusable ineptitude, by a municipal agency in failing to respond adequately to a call for help."  *Wanzer v. District of Columbia*, 580 A.2d 127, 132 (D.C. 1990). "To give rise to a special relationship, the agency's response to the private party must in some demonstrable way exceed the response generally made to other members of the public."  *Id*. (citing *Turner v. District of Columbia*, 532 A.2d 662, 673 (D.C. 1987)). Plaintiffs have failed to allege any facts showing that the District Defendants owed Kebede and Solomen any greater duty under the Construction Codes than they owed any other member of the public, or that Kebede and Solomen justifiably relied on any actions taken by the District Defendants.  Accordingly, the Court should dismiss Counts III and IV of the Complaints.

## CONCLUSION

For these reasons, the Court should dismiss Counts III, IV, and V of the Complaints with prejudice.

Date:   December 20, 2021                         Respectfully submitted,

                                                 KARL A. RACINE
                                                 Attorney General for the District of Columbia

16

Exhibit B

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Christina Okereke*
CHRISTINA OKEREKE [219272]
Chief, Civil Litigation Division Section II

/s/ *Brendan Heath*
BRENDAN HEATH [#1619960]
STEVEN N. RUBENSTEIN [#1013094]
MATTHEW TROUT [#1030119]
Assistant Attorneys General
400 Sixth Street, N.W., Suite 10100
Washington, D.C. 20001
(202) 442-9880
brendan.heath@dc.gov

*Counsel for Defendants District of Columbia, Inez
Saki-Tay, Louise Peterson, Harriet A. Broadie,
Anthony Prather, Ferdinand Gamboa, Anette Tibbs,
Derek Brooks, Timothy Handy, John Barnes, Jr.,
and Shawnte Williams*

17